UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Levy Ad Group, Inc., et al.<br><br>Plaintiffs<br><br>v.<br><br>The Chubb Corporation dba Chubb Group of Insurance Companies, et al.,<br><br>Defendants | Case No.: 2:20-cv-00763-JAD-DJA<br><br>**Order Granting Defendants' Motion to Dismiss and Closing Case**<br><br>[ECF No. 11] |

    Levy Ad Group, Inc., Levy Production Group, LLC, and Levy Online sue the Federal Insurance Company for failing to provide coverage for economic losses incurred from the closure of their businesses during the COVID-19 pandemic.[1] Federal Insurance moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the Levy companies' insurance policy does not provide coverage for their claims.[2] Because the Levy companies do not and cannot allege direct physical loss or damage—to their property or others'—sufficient to trigger coverage under their insurance policy, I grant Federal Insurance's motion, dismiss this action with prejudice, and close this case.

## Background[3]

    Like many businesses throughout the nation, the Las Vegas-based Levy companies shuttered their advertising, video-production, and marketing entities because of the spread of

---

[1] ECF No. 1 (complaint).

[2] ECF No. 11 (motion to dismiss).

[3] This is merely a summary of facts alleged in the complaint and should not be construed as findings of fact.

SARS-CoV-2, the virus responsible for the COVID-19 pandemic.[4]  Claiming that a series of emergency orders and directives issued by Nevada's Governor Steve Sisolak required their businesses' closure, the Levy companies requested insurance coverage from their provider, Federal Insurance, for their lost "business income and extra expense[s]."[5]  Though they disclaim any obligation to identify specific provisions in their policy providing coverage,[6] they quote the policy's provision covering "business[-]interruption" losses caused by "the prohibition, by a civil authority, of access to the insured business premise."[7]  The Levy companies also attach the policy to their complaint, which provides coverage for "direct physical loss or damage . . . caused by or result[ing] from a covered peril."[8]  It also provides "additional coverages," including coverage under the referenced civil-authority provision, which states:

> "We will pay for the actual: business income loss you incur due to the actual impairment of your operations; and extra expense you incur due to the actual or potential impairment of your operations, directly caused by the prohibition of access to: your premises; or a dependent business premises [,] [b]y a civil authority.
>
> This prohibition of access by a civil authority must be the direct result of direct physical loss or damage to property away from such premises or such dependent business premises by a covered peril, provided such property is within: one mile; or the applicable miles shown in the Declarations, from such premises or dependent business premises, whichever is greater.[9]

---

[4] ECF No. 1, ¶ 1.

[5] ECF Nos. 1, ¶¶ 33; ECF 4-5 at 2.

[6] *See* ECF No. 1, ¶ 22.

[7] *Id.* at ¶ 23 (citing ECF No. 4 at 59–60).  In the letters attached to their complaint, the Levy companies claim that they "are not making a claim under the business[-]interruption provision in their policy because their business premises were and are affected by COVID-19," but because "their premises have been ordered closed by a Civil Authority."  *See* ECF No. 4-5 at 4.

[8] ECF No. 4 at 56.

[9] *Id.* at 59.

The Levy companies submitted their claim to Federal Insurance on March 24, 2020.[10] Over the next three weeks, Federal Insurance stated that it was investigating the Levy companies' claim but, by April 24, 2020, had yet to render a decision.[11] Frustrated by Federal Insurance's failure to provide prompt coverage, the Levy companies sued in this court four days later, seeking remedies for breach of contract, bad-faith insurance practices, and declaratory relief.[12]

Federal Insurance now moves to dismiss the Levy companies' complaint, arguing that (1) the policy does not provide coverage for business closures resulting from Governor Sisolak's COVID-19 orders; (2) the plaintiffs were not actually required to close their premises; (3) the plaintiffs fail to allege any facts supporting their "bad-faith" claims; and (4) declaratory relief is not a cause of action.[13] The Levy companies largely ignore these arguments, maintaining that they have alleged sufficient facts to put the insurance company "on notice" of their claims.[14]

## Discussion

A properly pled complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[15] While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusion" or a "formulaic recitation of the elements of a cause of action."[16] "Factual allegations must be enough to rise above the

---

[10] ECF No. 1, ¶ 33.

[11] *Id.* at ¶¶ 34–36. Though not alleged in the complaint, the parties agree that, on May 29, 2020, Federal Insurance denied the Levy companies' coverage claim. *See* ECF Nos. 11 at 8; 15 at 2.

[12] ECF No. 1.

[13] ECF No. 11.

[14] ECF No. 15.

[15] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

speculative level"[17] and the complaint must "contain enough facts to state a claim to relief that is plausible on its face."[18]

### I. The companies' breach-of-contract claim fails because their insurance policy does not cover their alleged losses.

Although the Levy companies attempt to shield themselves from dismissal by invoking "notice" pleading standards,[19] the clear terms of their insurance policy do not provide coverage for their claims. Under Nevada law, an insurer "bears a duty to defend its insured whenever it ascertains facts [that] give rise to the potential of liability under the policy."[20] While all doubts as to coverage are "resolved in favor of the insured," the "duty to defend is not absolute."[21] "A potential for coverage only exists when there is arguable or possible coverage" and "[d]etermining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy."[22] Interpreting insurance contract terms in Nevada is normally a job for the court.[23]

---

[17] *Twombly*, 550 U.S. at 555.

[18] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[19] In *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that a claim may proceed when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct, crossing the line from a merely conceivable claim to a plausible one. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570. Notice pleading is insufficient here, particularly when the plaintiffs have attached the insurance policy to their complaint, which they claim articulates their basis for coverage.

[20] *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004).

[21] *Id.*

[22] *Id.*

[23] *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

4

### A. The Levy companies fail to allege direct physical loss or damage.

The Levy companies' policy generally limits its "business income with extra expense" coverage to "direct physical loss or damage."[24] While the Levy companies accurately point out that these terms are undefined, that does not mean that this case must proceed to discovery so that the parties may divine Federal Insurance's intentions about coverage.[25] An insurance policy "is enforced according to its terms to effectuate the parties' intent,"[26] viewing its provisions "in their plain, ordinary[,] and popular sense."[27] In Nevada, any limitation in policy coverage must "clearly and distinctly communicate[] to the insured the nature of the limitation."[28] "To determine whether a term is ambiguous, it should not be viewed standing alone, but rather in conjunction with the policy as a whole 'in order to give a reasonable and harmonious meaning and effect to all its provisions.'"[29]

The Levy companies fail to allege "direct physical loss or damage" that might trigger Federal Insurance's policy coverage. While neither party identifies Nevada authority that has explicitly interpreted the term "direct physical loss or damage," the Nevada Supreme Court has generally cabined claims for coverage under similar policies to plaintiffs who allege some sort of structural or physical change to a property, actually altering its functionality or use.[30] The Ninth

---

[24] ECF No. 4 at 56.

[25] ECF No. 15 at 3.

[26] *Burrows v. Progressive Cas. Ins.*, 820 P.2d 748, 749 (Nev. 1991).

[27] *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993) (citing *Nat'l Union Fire Ins. Co. v. Reno's Exec. Air*, 682 P.2d 1380, 1382 (Nev. 1984)).

[28] *Reno's Exec. Air*, 682 P.2d at 1382.

[29] *Fourth St. Place v. Travelers Indem. Co.*, 270 P.3d 1235, 1239 (Nev. 2011).

[30] *See Fed. Ins. Co. v. Coast Converters*, 339 P.3d 1281, 1283 (Nev. 2014) (describing "electrical problems at a plastic bag manufacturing plant [that] led to damaged machinery and an increased number of defective bags being produced"); *Farmers Home Mut. Ins. Co. v. Fiscus*, 725 P.2d

Circuit has consistently agreed with such a reading, upholding both an exclusion of coverage under a "direct physical loss or damage" provision when the "record reveal[ed] that there was no damage caused by the fire;"[31] and affirming dismissal of "intangible" claims under a policy's "direct physical loss" provision.[32] The Levy companies do not allege any physical losses or damage to their premises; they instead merely assert that they were "ordered to close" and "were not permitted to conduct business operations."[33] A growing number of courts across the country have reasoned that these "economic losses" caused by COVID-19 closures, based on allegations identical to the Levy companies', do not trigger policy coverage predicated on direct physical loss or damage.[34] I find their reasoning persuasive and join them.

---

234, 236 (Nev. 1986) (upholding coverage determination under a "physical loss" provision for damages to a home caused by flooding "from disconnected water supply pipes").

[31] *Commonwealth Enters. v. Liberty Mut. Ins. Co.*, 101 F.3d 705 (table) (9th Cir. 1996).

[32] *Sentience Studio, LLC v. Travelers Ins. Co.*, 102 F. App'x 77, 81 (9th Cir. 2004) (unpublished).

[33] ECF No. 1, ¶ 31.

[34] *Emerald Coast Rests., Inc. v. Aspen Specialty Ins. Co.*, No. 20-cv-5898, 2020 WL 7889061, at *2 (N.D. Fla. Dec. 18, 2020); *Carrot Love, LLC v. Aspen Specialty Ins. Co.*, No. 20-23586-Civ, 2021 WL 124416, at *2 (S.D. Fla. Jan. 13, 2021) (noting the "nearly unanimous view that COVID-19 does not cause direct physical loss or damage to a property sufficient to trigger coverage under the policy at issue here") (collecting cases); *Berkseth-Rojas v. Aspen Am. Ins. Co.*, No. 3:20-CV-0948, 2021 WL 101479, at *5 (N.D. Tex. Jan. 12, 2021) ( "Dr. Berkseth-Rojas has failed to sufficiently allege that her property, or any other property, has been actually contaminated or infiltrated by COVID-19, or that her claimed losses are due to infiltration or contamination of property by COVID-19. Rather, she pleads that she was unable to use her property in the way she did before the pandemic due to the Orders and due to steps taken to prevent the 'emergence or reemergence' of COVID-19."); *Johnson v. Hartford Fin. Servs. Grp., Inc.*, No. 1:20-cv-02000, 2021 WL 37573, at *5 (N.D. Ga. Jan. 4, 2021) ("Plaintiffs do not allege any tangible alteration to a single physical edifice or piece of equipment [that] the COVID-19 virus caused.").

**B.     Civil-authority coverage does not apply to the Levy companies' claims.**

Nor does the policy's civil-authority provision provide coverage for economic losses sustained by Governor's Sisolak's emergency orders restricting business operations. In order to receive coverage for economic losses under the civil-authority provision, the Levy companies must allege that a civil authority's "prohibition of access" to their business was "the direct result of direct physical loss or damage to property" near the Levy companies' premises.[35] Not only do the Levy companies fail to allege any direct physical loss or damage caused the COVID-19 pandemic (either to their own property or a neighbor's), but their complaint is devoid of allegations connecting any perceived physical damage and the Governor's stay-at-home orders. As before, numerous other district courts have dealt with similar coverage provisions in the COVID-19 context, dismissing claims for coverage because the plaintiff does not, and cannot, show that the virus caused physical damage to an adjacent property that directly caused the government to close the plaintiff's business.[36] While I am sympathetic to the Levy companies'

---

[35] ECF No. 4 at 59.

[36] *E.g.*, *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418, 2020 WL 5359653, at *5 (C.D. Cal. Sept. 2, 2020) (interpreting a similar coverage provision and denying coverage because the plaintiffs did not "allege actual cases" of direct damage "at other locations" caused by the COVID-19 pandemic); *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, No. 2:20-cv-05663, 2020 WL 6440037, at *4 (Oct. 27, 2020) (reasoning that the plaintiff failed to state a claim for improper denial of coverage due to COVID-19 closures, when coverage was premised on a "civil authority" "that prohibits access to the area immediately surrounding the damaged property, including the insured's premises"); *Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, No. 20-CV-907, 2020 WL 5500221, at *6 ("[T]o survive dismissal, the complaint must, at a minimum, allege that the government (1) prohibited [p]laintiffs from accessing their premises (2) due to direct physical loss of or damage to property elsewhere."); *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, No. 20-cv-04434, 2020 WL 5642483, at *3 (N.D. Cal. Sept. 22, 2020) (dismissing a complaint, in part, because of a dearth of allegations showing that California's COVID-19 orders were issued due to physical property damage or loss at premises located near the plaintiff's); *Water Sports Kauai, Inc. v. Fireman's Ins. Co.*, No. 20-cv-03750, 2020 WL 6562332, at *8 (N.D. Cal. Nov. 9, 2020) ("In the absence of any allegation that any specific neighboring property to a San People property *in Hawaii* had actual coronavirus exposure, this coverage has not been plausibly triggered.") (emphasis in original).

7

plight, their policy is not susceptible to a coverage-providing reading, so I grant Federal Insurance's motion with respect to their breach-of-contract claims.

## II.     Bad-faith insurance practices and declaratory relief

Federal Insurance also argues that the Levy companies allege no facts supporting their bad-faith denial claims and that I should dismiss the companies' claim for declaratory relief because it is a remedy, not a cause of action—which the Levy companies concede. This alone warrants dismissal.[37] But Federal Insurance is also correct on the merits. As with their breach-of-contract claim, the Levy companies do little more than allege that the parties had a contract, and they do not provide sufficient facts for me to plausibly infer that Federal Insurance acted in a manner unfaithful to the purpose of the contract or denied their justified expectations.[38] And because I dismissed their substantive claims, I certainly cannot find that they are entitled to a declaratory judgment stating that Federal Insurance improperly denied their request for coverage. So I dismiss that request as well.

## III.   Leave to amend is futile.

Federal Rule 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." The Ninth Circuit has construed this rule broadly, requiring that leave to amend be granted with "extreme liberality."[39] But leave to amend may be denied if the proposed amendment is futile.[40] Not only do the Levy companies ignore this district's local rules, which

---

[37] L.R. 7-2(d) (stating that a party's failure to respond serves as consent to granting the motion).

[38] *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) ("It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair actions by one party that work to the disadvantage of the other.").

[39] *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted); *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) (noting "the strong policy permitting amendment" (citation omitted)).

[40] *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

8

require a party to attach a proposed amended pleading when seeking leave to amend,[41] but the facts that the Levy companies offer to include in an amended complaint do nothing to remedy the fatal deficiencies identified above.  Because I find that amendment of their complaint would be fruitless, I dismiss the Levy companies' complaint with prejudice.

### Conclusion

IT IS THEREFORE ORDERED that Federal Insurance's motion to dismiss **[ECF No. 11] is GRANTED** and the Levy companies' complaint is dismissed with prejudice.  The **CLERK OF COURT** is directed to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
Dated: February 16, 2021

---

[41] L.R. 15-1(a).